UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARCUS BLACK,

                                    Plaintiff,

                    -against-

DEVOY ROWE,

                                    Defendant.

---

**OPINION & ORDER**

23-CV-03677 (PMH)

PHILIP M. HALPERN, United States District Judge:

Marcus Black ("Plaintiff"), currently incarcerated at Green Haven Correctional Facility ("Green Haven") and proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Devoy Rowe ("Defendant"), a New York State Department of Corrections and Community Supervision ("DOCCS") employee. (Doc. 1, "Compl."). Construing the Complaint liberally, Plaintiff asserts claims for sexual abuse and excessive force in violation of the Eighth Amendment. (*See generally id.*).

Pending presently before the Court is Defendant's motion for summary judgment seeking dismissal of the Complaint under Federal Rule of Civil Procedure 56. (Doc. 63; Doc. 64, "Sonnenfeldt Decl."; Doc. 66, "Def. Br."). Plaintiff opposed Defendant's motion (Doc. 73, "Pl. Br."; Doc. 74, "Pl. Decl.") and the motion was fully submitted with the filing of Defendant's reply brief (Doc. 80, "Reply").[1]

---

[1] Plaintiff, apparently in response to Defendant's Reply brief, filed an "Opposition to Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment." (Doc. 82). The Court notes that Plaintiff neither sought nor received permission from the court to file a sur-reply to Defendant's motion, and impermissibly attempts to inject new claims for the first time through this filing. *See Endo Pharms. Inc. v. Amneal Pharms., LLC*, No. 12-CV-08060, 2016 WL 1732751, at *9 (S.D.N.Y. Apr. 29, 2016); *see also Mediavilla v. City of New York*, 259 F. Supp. 3d 82, 106 (S.D.N.Y. 2016) ("It is well settled that a litigant may not raise new claims not contained in the complaint in opposition to a motion for summary judgment."). However, considering Plaintiff's *pro se* status and Defendant's lack of objection to such filing, the Court will consider the arguments made in Plaintiff's sur-reply, to the extent properly made, as

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendant's Rule 56.1 statement,[2] and the admissible evidence proffered by the parties. Unless otherwise indicated, the facts cited herein are undisputed.

Plaintiff has been incarcerated at Green Haven since 2015. (56.1 Stmt. ¶ 5). Defendant has worked as a Corrections Officer for DOCCS since 2015, working at Green Haven beginning in

---

supplemental to his opposition. *Nationstar Mortgage LLC v. Hunte*, No. 16-CV-08708, 2020 WL 2836431, at *2 n.5 (S.D.N.Y. June 1, 2020).

[2] On April 9, 2025, Defendant filed a Rule 56.1 Statement. (Doc. 65, "56.1 Stmt."). Thereafter, Plaintiff submitted his own "Statement of Disputed Facts in Opposition to Summary Judgment" ("Plaintiff's 56.1 Statement") in connection with his opposition to the motion for summary judgment, that sets forth a series of questions, without citation to evidence in the record, that Plaintiff alleges "require[s] the denial of the entirety of defendant's motion." (Doc. 75, "Pl. 56.1"). Plaintiff also filed the "Declaration of Marcus Black" which includes additional allegations in response to the Defendant's 56.1 Statement. (*See, e.g.*, Pl. Decl. ¶¶ 5-9). Defendant asks the Court to deem admitted Defendant's 56.1 Statement as Plaintiff's opposition, declaration, and Plaintiff's 56.1 Statement "fails to point to any evidence to contradict the essential facts set forth in Defendant's 56.1 Statement." (Reply at 2-4). While "*pro se* litigants are [ ] not excused from meeting the requirements of Local Rule 56.1 . . . where a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009); *see also Gadson v. Goord*, No. 96-CV-07544, 2000 WL 328879, at *3 n.1 (S.D.N.Y. Mar. 28, 2000) ("Plaintiff did not submit a Statement Pursuant to Civil Rule 56.1. Instead, he submitted 'Plaintiff's Opposition for Defendant's Memorandum of Law in Support of Motion for Summary Judgment,' stating his disagreement with the defendant's version of the facts. In light of plaintiff's *pro se* status, the Court will accept this memorandum in lieu of a Rule 56.1 Statement."). The Court considers the newly added information in Plaintiff's opposition, declaration and 56.1 Statement to the extent it reflects his disagreement with Defendant's statements made in Defendant's 56.1 Statement and only where that disagreement is supported by evidence in the record. The Court is mindful that bald and conclusory statements do not constitute opposition to Defendant's Rule 56.1 Statement. *See Woods v. Acampora*, No. 08-CV-04854, 2009 WL 1835881, at *3 (S.D.N.Y. June 24, 2009) ("[A] *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." (quoting *Odom v. Keane*, No. 95-CV-09941, 1997 WL 576088, at *3 (S.D.N.Y. Sept. 17, 1997))).

March 2016 through the time period of Plaintiff's allegations herein. (Sonnenfeldt Decl., Ex. D ("Def. Tr.") at 12:16-18, 20:8-16).

Between approximately 2019 and 2024, Plaintiff worked in New York's Correctional Industries Program ("Industry"). (56.1 Stmt. ¶¶ 1, 5). Plaintiff, while working in Industry, engaged in employment activities such as assembling and repairing office furniture, which necessarily involved the use of tools such as drills, air blowers, mallets, hammers, and screw guns. (*Id.* ¶¶ 1, 6). Plaintiff, along with all other incarcerated individuals working at Industry, would check out tools at the start of a shift and check them back in prior to leaving the Industry area at the end of each shift. (*Id.* ¶ 6). DOCCS Directive 4910 ("Directive 4910") details policies and procedures for the "search for and control of contraband," including the search of an incarcerated individual's person. (*Id.* ¶ 2; Sonnenfeldt Decl., Ex. C at 2). According to Directive 4910, and orders given to Defendant, any incarcerated individuals leaving Industry would be routed through a metal detector and then be subjected to a pat frisk. (56.1 Stmt. ¶¶ 3-4, 7-8).

On January 31, 2023, Plaintiff concluded work at Industry, exited through the metal detector, and was then directed to be pat frisked, as was routine. (*Id.* ¶ 9). As Defendant began the pat frisk search, Plaintiff objected to the way in which Defendant was conducting the search. (*Id.* ¶ 10). Specifically, and according to Plaintiff, Defendant stuck his hand "in [Plaintiff's] pants," then upon Plaintiff protesting, Defendant "t[ook] his hand and place[d] it on [Plaintiff's] butt." (Sonnenfeldt Decl., Ex. A ("Pl. Tr.") at 32:18-34:4). Defendant does not recall whether he touched Plaintiff's buttocks during the pat frisk, but stated that during the pat frisk he checked Plaintiff's waistband for contraband by moving his thumb around and on the inside of the waistband. (Def. Tr. at 72:7-21, 81:11-18).

Plaintiff claims that he remained in the proper pat frisk position with both hands on the wall and legs spread during this interaction. (Pl. Tr. at 32:18-34:4). Defendant however, maintains that Plaintiff repeatedly came "off the wall," and after the third warning to stay "on the wall," Defendant "put [his] hand on [Plaintiff's] back and [] put him to the wall." (Def. Tr. at 70:17-73:23). While Plaintiff claims that Defendant took him to the ground, Defendant does not recall whether Plaintiff fell to the ground at any point. (Pl. Tr. at 32:18-34:4, 40:2-21, 91:18-92:11; Def. Tr. at 73:2-74:8).[3] Plaintiff, upon being restrained by Defendant, was escorted back to his cell by the supervisor on duty, Sergeant Boyd. (56.1 Stmt. ¶ 11). After the interaction, Defendant went back to pat frisking the remaining incarcerated individuals leaving Industry, and was never directed to prepare a use of force report regarding said interaction. (*Id.* ¶ 12).

Plaintiff, as a result of the interaction with Defendant on January 31, 2023, alleges that he suffered injuries to his knee, shoulder, and back, but did not require or request medical attention on the date of the interaction. (*Id.* ¶ 13; Pl. Tr. at 47:14-25, 65:23-68:12). On February 1, 2023, Plaintiff called the Prison Rape Elimination Act ("PREA") hotline to complain of Defendant's alleged "inappropriate[] touch[ing]" from the prior day's interaction. (56.1 Stmt. ¶ 14). Green Haven conducted a PREA investigation into the incident, that included an interview with and medical examination of Plaintiff. (*Id.* ¶¶ 15-22). During the investigation, a Green Haven nurse noted that Plaintiff had "no injury," and Plaintiff told the reviewing Sergeant, Sergeant Johnson, that Defendant "did not touch, stroke or penetrate his private areas." (*Id.* ¶¶ 16-18). The PREA

---

[3] Larry Smith and Cypress Roberts, two other incarcerated individuals at Green Haven during the relevant time period, were deposed as witnesses to the incident on January 31, 2023. (*See* 56.1 Stmt., ¶ 19; Sonnenfeldt Decl., Exs. I, J ("Smith Tr." and "Roberts Tr.," respectively)). Neither Smith nor Roberts saw Defendant affirmatively push Plaintiff to the ground, though Roberts did note that Plaintiff ended up on the ground during the interaction with Defendant. (Smith Tr. at 26:24-27:2; Roberts Tr. at 28:23-29:16).

investigation concluded with Sergeant Johnson noting that Plaintiff's allegations were "unable to [be] substantiated," and found that Defendant did not engage in wrongdoing. (*Id.* ¶¶ 20, 22).

This litigation followed.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 721-22 (S.D.N.Y. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[4] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023) (citing *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney*, 49 F.4th at 738 (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly

granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

The Court is, of course, mindful that "[p]ro se litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by admissible evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment"); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

## ANALYSIS

Plaintiff's claims proceed under 42 U.S.C. § 1983. That statute provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "This language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120,

2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021)).

I.        Plaintiff's First Claim: Eighth Amendment Violations

Plaintiff presents two factual predicates for recovery under the Eighth Amendment by way of § 1983. First, Plaintiff complains that Defendant sexually abused him during a routine pat frisk at Green Haven. Second, Plaintiff alleges that Defendant used excessive force on him during the same routine pat frisk. The Court addresses the theories at issue *seriatim*.

A.   Theory No. 1: Sexual Abuse

Plaintiff's sexual abuse claim is assessed under the Eighth Amendment. "Under the Eighth Amendment, conditions of confinement 'must not involve the wanton and unnecessary infliction of pain.'" *Vann v. Griffin*, No. 16-CV-09903, 2018 WL 6199860, at *6 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "[S]exual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997). Moreover, the violation must be (i) objectively serious, and (ii) committed by a defendant with subjective culpability. *See, e.g.*, *Castro-Sanchez v. N.Y.S. Dep't of Corr. Servs.*, No. 10-CV-08314, 2012 WL 4474154, at *2-3 (S.D.N.Y. Sept. 28, 2012). When analyzing the subjective prong, "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Crawford v. Cuomo*, 796 F.3d 252, 257-58 (2d Cir. 2015). As the Second Circuit has explained, "even an officer who is meticulous in conducting a search does not violate an inmate's constitutional rights as long as the officer had no intention of humiliating the inmate or deriving sexual arousal or gratification from the contact." *Id.* at 258.

There is no evidence in the record from which a jury could reasonably conclude that Defendant's pat frisk of Plaintiff was undertaken in violation of the Eighth Amendment. Namely, it is undisputed that: the extent of Defendant's touching of Plaintiff occurred during the legitimate pat frisk undertaken immediately after Plaintiff left Industry (56.1 Stmt. ¶¶ 6-10); Defendant did not "touch, stroke, or penetrate [Plaintiff's] private areas" (*id.* ¶ 16); and records from the PREA investigation indicate that Plaintiff suffered "no injury" as a result of the pat frisk (*id.* ¶ 18). While Plaintiff alleges that Defendant "put his thumbs inside Plaintiff's pants area around the belt loop area and touch[ed] skin close to his pub[]ic area," Defendant maintains that "at no time did [he] put [his] thumb inside Plaintiff's pants or touch his skin near his pubic area" during the pat frisk. (*Id.* ¶¶ 16, 21). Larry Smith and Cypress Roberts, two incarcerated individuals who were present at the time of the pat frisk, corroborate Defendant's side of the story, stating that they did not see Defendant reach inside Plaintiff's pants during the search. (*Id.* ¶ 19). However, Defendant apparently concedes that he may have, at the very least, patted Plaintiff's buttocks over his pants during the pat frisk. (Def. Br. at 9). Even crediting Plaintiff's version of the events, no jury could reasonably conclude that Defendant's momentarily patting of Plaintiff's buttocks and/or looping his thumbs inside Plaintiff's waistband, during a legitimate pat frisk search, could constitute an Eighth Amendment violation. *Cf. Thomas v. Jacobs*, No. 19-CV-06554, 2025 WL 662899, at *13 (S.D.N.Y. Feb. 28, 2025) (granting summary judgment on *pro se* plaintiff's Eighth Amendment sexual abuse claim where "initiation of the search was justifiable," it was "limited to the area where contraband was reasonably expected to be," and the plaintiff was "digitally penetrated . . . [only] momentar[il]y" to facilitate the search for contraband).

In any event, even if such actions could satisfy the objective prong, which they do not, there is nothing in the record to support a finding that Defendant's actions were undertaken to

"humiliat[e]" Plaintiff or to "deriv[e] sexual arousal or gratification" from such contact. *Crawford*, 796 F.3d at 258. There is, in fact, nothing in the record that Defendant said anything of a sexual nature during the course of the pat frisk (Def. Tr. at 71:21-73:14; Pl. Tr. at 39:21-41:10, 41:19-43:5), nor any indication that Defendant was doing anything but conducting a thorough, but legitimate and routine, contraband search. *See Torres v. City of New York*, No. 17-CV-06604, 2019 WL 4784756, at *5 (S.D.N.Y. Sept. 30, 2019). Plaintiff's broad and conclusory allegations of Defendant's alleged "notable pattern of violations of this nature" (Doc. 82 at 2), similarly do not save his claim. *See Niagara Mohawk Power Corp. v. Jones Chemical, Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) ("Conclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact.").[5]

Accordingly, Defendant's motion is granted as to Plaintiff's Eighth Amendment sexual abuse claim.

B. Theory No. 2: Excessive Force

"A prison official's use of force violates the Eighth Amendment when, objectively, 'the alleged punishment was . . . sufficiently serious,' and, subjectively, 'the prison official . . . had a sufficiently culpable state of mind.'" *Torres*, 2019 WL 7602181, at *6 (quoting *Boddie*, 105 F.3d

---

[5] Plaintiff, in his unauthorized sur-reply, refers to Defendant's deposition as purported evidence of this "pattern," stating that Defendant had been "suspended from duty for identical accusations." (Doc. 82 at 2). The Court, upon thorough review of Defendant's deposition transcript, does not identify any testimony to support Plaintiff's allegation of "identical accusations." While Defendant testified that he had previously responded to one prior PREA Complaint, he could not recall any of the facts of that incident, nor how it was resolved, which belies Plaintiff's "identical accusations" claim. (*See* Def. Tr. at 19:9-21:7). Additionally, Defendant, when asked whether he was ever disciplined, recalled only one previous occurrence where he was suspended after he was assaulted and defended himself, and the investigation determined that the force he used was "excessive." (*Id.* at 21:13-23:10). Accordingly, in light of the above, and even if the Court were to construe Plaintiff's allegations liberally as establishing the "mere existence of a scintilla of evidence" supporting his claim, the Court finds that Plaintiff has nevertheless failed to establish a genuine dispute of material fact sufficient to deny Defendant's motion for summary judgment. *Niagara Mohawk Power Corp.*, 315 F.3d at 175.

at 861), *adopted by* 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019). "The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary standards of decency.'" *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). This objective component requires, in the abstract, "that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Bradshaw v. City of New York*, 855 F. App'x 6, 9 (2d Cir. 2021) (quoting *Harris v. Miller*, 818 F.3d 49, 64 (2d Cir. 2016)). The subjective component, on the other hand, requires a "showing that 'the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct.'" *Randolph v. Griffin*, 816 F. App'x 520, 523 (2d Cir. 2020) (quoting *Harris*, 818 F.3d at 63). "[T]he test for wantonness is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Fabricio v. Annucci*, 790 F. App'x 308, 310 (2d Cir. 2019) (quoting *Harris*, 818 F.3d at 63).

Of course, in evaluating an excessive force claim, courts must also bear in mind that "[n]ot every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), and "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10. Still, "[w]hen prison officials maliciously and sadistically use force to cause harm, a plaintiff need not demonstrate significant injury because, in those circumstances, contemporary standards of decency always are violated. Thus, the malicious use of force to cause harm constitutes an Eighth

Amendment violation *per se*." *Greenburger v. Roundtree*, No. 17-CV-03295, 2020 WL 6561598, at *4 (S.D.N.Y. Jan. 16, 2020), *adopted by* 2020 WL 4746460 (S.D.N.Y. Aug. 16, 2020); *see also Wright*, 554 F.3d at 269 ("[W]here a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically, our Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak."); *White v. Marinelli*, No. 17-CV-01094, 2019 WL 1090802, at *10 (N.D.N.Y. Mar. 8, 2019) ("[P]hysical assaults by guards to humiliate an inmate, or in retaliation for past conduct, violate the Eighth Amendment.").

Plaintiff's claim that Defendant used excessive force against him during the pat frisk fails on the undisputed facts.

Plaintiff testified that during a routine pat frisk, Defendant pushed him or did a "tactical move" to take Plaintiff to the ground after Plaintiff protested the way in which Defendant was searching him. (Pl. Tr. at 32:18-34:4, 40:2-21, 91:18-92:11; 56.1 Stmt. ¶ 10). While the parties' testimony differs as to the exact nature of the protest, Defendant confirms that he restrained Plaintiff after his objection and pushed him against the wall to do so. (Def. Tr. at 73:2-74:8). Defendant did not recall whether Plaintiff ever fell to the ground during the restraint. (*Id.*). Defendant then handcuffed him "extremely tight[ly]," according to Plaintiff. (Pl. Tr. at 40:16-21, 42:23-44:10). Defendant testified that he did not have handcuffs, and therefore he thought, though was not entirely sure, that the responding officer was the one who handcuffed Plaintiff after Defendant restrained him. (Def. Tr. at 74:21-75:7).

Even taking Plaintiff's account as true that Defendant pushed him to the ground and handcuffed him "extremely tight[ly]" while on the ground (Pl. Tr. at 40:16-21, 42:23-44:10), as to

the objective prong, nothing about Defendant's conduct is "*repugnant* to the conscience of mankind" or rises to the dignity of an Eighth Amendment violation. *Hudson*, 503 U.S. at 9-10. While Plaintiff claims he suffered injuries to his knee, shoulder, and back, it is undisputed that he did not require or request medical attention on the date of incident, walked back to his cell on his own, and the subsequent PREA Investigation resulted in a finding that Plaintiff had "no injury" resulting from the incident. (56.1 Stmt. ¶¶ 11, 13, 18). Accordingly, Plaintiff's self-serving and conclusory statements and testimony, coupled with the lack of evidence in the record indicating documented or treated injuries, are not sufficient to raise Defendant's use of force above *de minimis*. *See, e.g.*, *James v. Phillips*, No. 05-CV-01539, 2008 WL 1700125, at *5 (S.D.N.Y. Apr. 9, 2008) ("True, plaintiff need not show a significant injury but he must come forward with more than a *de minimis* use of force. In this case, there was nothing more than a shove of an inmate who was not then handcuffed."); *see also Morocho v. New York City*, No. 13-CV-04585, 2015 WL 4619517, at *9 (S.D.N.Y. July 31, 2015) (granting summary judgment to defendants in an excessive force case where the plaintiff "sought no medical attention . . . and has submitted no medical records or photographs . . . ."); *Murray v. Goord*, 668 F. Supp. 2d 344, 361 (N.D.N.Y. 2009) ("While plaintiff may have suffered injury . . . the *de minimis* nature of this injury is demonstrated in that the record shows that after the initial examination plaintiff did not complain

. . . nor did he seek any further medical treatment . . . .").[6] Accordingly, Plaintiff fails to satisfy the objective prong.

While the Court need not continue to the subjective prong in light of the above finding, it bears noting that Plaintiff does not offer any evidence that Defendant acted "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Instead, the record evidence indicates that Plaintiff was not cooperating with Defendant's legitimate search, and Defendant acted only to restrain Plaintiff. (56.1 Stmt. ¶ 10; Roberts Tr. at 29:2-16 ("during a security frisk, an inmate is supposed to keep both hands flat, palms against the wall, leg spread . . . if you move, it's considered a security threat," and "Inmate Black moved, he turned, he says, what are you doing?" then Defendant "pushed him against the wall and I'm not sure if he pushed him to the ground . . . but . . . [Plaintiff] ended up on the ground"); Smith Tr. at 25:20-27:11). As such, Defendant's use of force, *de minimis* as it was, cannot be said to evince "a 'wanton' state of mind," and rather, was simply an exercise to keep control and maintain internal order and discipline at the correctional facility. *Perry v. Stephens*, 659 F. Supp. 2d 577, 583 (S.D.N.Y. 2009); *see also Lebron v. Mrzyglod*, No. 14-CV-10290, 2019 WL 3239850, at *15 (S.D.N.Y. July 18, 2019). Thus, Defendant did not possess a sufficiently culpable state of mind to support an excessive force claim under the Eighth Amendment. Defendant's motion for summary judgment is granted as to this claim.

---

[6] The Court acknowledges that "overly tight handcuffing can constitute excessive force," where the handcuffing itself "causes some injury beyond temporary discomfort." *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008). However, there is nothing in the record to indicate that Plaintiff complained about the tightness of the handcuffs during the incident, or that Plaintiff sustained any injury whatsoever therefrom. (*See* Pl. Tr. at 43:16-44:13, 46:5-48:8). Accordingly, on the record here, any excessive force allegations premised upon the alleged "extremely tight" handcuffs is also not sufficient to state a claim under the Eighth Amendment. *See Lynch*, 567 F. Supp. 2d at 469; *see also Davis v. Fischer*, No. 09-CV-06084, 2012 WL 177400, at *10 (W.D.N.Y. Jan. 20, 2012).

II.    Defendant's Second Affirmative Defense: Qualified Immunity

Defendant moves, in the alternative, for summary judgment on the affirmative defense of qualified immunity as to Plaintiff's Eighth Amendment claim premised on the allegations of sexual abuse. (Def. Br. at 11-13; Reply at 9).[7] Even if Plaintiff's Eighth Amendment claim had survived Defendant's summary judgment motion on the merits, which it does not, the Court nevertheless finds that Defendant is also entitled to qualified immunity.

"Where properly asserted, qualified immunity bars claims for violations of constitutional rights unless '(1) the official violated a statutory or constitutional right, and (2) that right was clearly established at the time of the challenged conduct.'" *Murphy v. Hughson*, 82 F.4th 177, 184 (2d Cir. 2023) (quoting *Matzell v. Annucci*, 64 F.4th 425, 434 (2d Cir. 2023). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). If an official's belief that his action does not violate clearly established law is "objectively reasonable," he or she is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013). The moving defendant bears the burden of establishing entitlement to qualified immunity. *See Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013). "[Q]ualified immunity 'protects all but the plainly incompetent or those who *knowingly* violate the law.'" *Berg v. Kelly*, 897 F.3d 99, 109 (2d Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

---

[7] Defendant makes no argument as to the affirmative defense of qualified immunity as concerns Plaintiff's Eighth Amendment claim premised on excessive force. Accordingly, the Court declines to conduct such an analysis. In any event, the Court acknowledges that it need not reach this issue, in light of the dismissal on the merits of Plaintiff's Eighth Amendment claim on this theory. (*See supra* at I.B).

Defendant is entitled to qualified immunity as to the sexual abuse prong of Plaintiff's Eighth Amendment claim. As an initial matter, assuming that allegations of an Eighth Amendment sexual abuse claim are plainly a right "clearly established at the time of the challenged conduct," the Court focuses instead on whether Defendant "violated" such a "constitutional right." *See Dixon v. von Blanckensee*, 994 F.3d 95, 104 (2d Cir. 2021) (holding that if the court "answer[s] either [prong of the Qualified Immunity analysis] in the negative, qualified immunity attaches," and the court may consider "these questions in either order"). Defendant argues that it was objectively reasonable for Defendant to believe the pat frisk search was lawfully conducted pursuant to the prison policies, including any momentary touching inside the waistband of Plaintiff's pants or patting Plaintiff's clothed buttocks. (Def. Br. at 12). The Court agrees.

As an initial matter, Plaintiff fails to respond to Defendant's arguments concerning qualified immunity, in either his opposition or improper sur-reply. (*See* Pl. Br.; Doc. 82). Accordingly, the Court construes Plaintiff's non-response as a concession of Defendant's entitlement to his second affirmative defense. *Cf. Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 645 (S.D.N.Y. 2015) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument" (internal quotation marks omitted)). In any event, Defendant's actions indicate that he was neither "plainly incompetent" nor "knowingly violate[d] the law," and thus is entitled to summary judgment. *See Sacaza v. City of New York*, No. 24-2833-CV, 2026 WL 680910, at *4 (2d Cir. Mar. 11, 2026).

It is undisputed that incarcerated individuals who are leaving areas such as Industry, must "pass through a walk-through metal detector," and may be subjected to a "pat frisk," which is defined by DOCCS policy as "a search by hand of an incarcerated individual's person and their

16

clothes, while the incarcerated individual is clothed . . . and shall include searching into the incarcerated individual's clothing," and may also include "[c]ontact through the clothing with the genitalia, groin, breast, inner thigh, and buttocks," as a "necessary component" of such search. (56.1 Stmt. ¶¶ 2-4, 6-8; Sonnenfeldt Decl., Ex. C at 5). Therefore, even taking Plaintiff's version of the events as true, namely, that Defendant "put his thumbs inside" Plaintiff's waistband and put his hand on Plaintiff's buttocks as part of the search, the Court finds that it was objectively reasonable for Defendant to believe that he was not violating Plaintiff's Eighth Amendment rights through his actions of searching for contraband.

While the Court acknowledges that the definition of "pat frisk" in Directive 4910 does not explicitly allow for searching underneath the clothing of an incarcerated individual, it does allow for "searching *into* the incarcerated individual's clothing" (*see* Sonnenfeldt Decl., Ex. C (emphasis added)) and Defendant testified that a "proper Pat Frisk consists of [] checking the waistband for contraband," which in Defendant's view, could include trailing your thumbs inside the waistband (Def. Tr. at 81:11-84:2). Thus, accounting for the "legitimate interests that stem from the government's need to manage the facility," with appropriate "defer[ence]" to the established prison policy, the Court concludes that Plaintiff's conduct was objectively reasonable. *See Barnes v. Fedele*, 813 F. App'x 696, 700 (2d Cir. 2020) (affirming the district court's grant of summary judgment on qualified immunity grounds and holding that defendants were entitled to summary judgment where they enforced a prison directive they believed to be lawful, as "carrying out a lawful policy is reasonable."); *see also Michel v. Manna*, No. 15-CV-01187, 2017 WL 1381859, at *5 (N.D.N.Y. Jan. 17, 2017), *adopted by* 2017 WL 1380583 (N.D.N.Y. Apr. 17, 2017).

Accordingly, Defendant is entitled to summary judgment on his second affirmative defense of qualified immunity as to the sexual abuse theory of Plaintiff's Eighth Amendment claim.

## CONCLUSION

In light of the foregoing, Defendant's motion for summary judgment is GRANTED.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to: (i) terminate the motion sequence pending at Doc. 63; (ii) mail a copy of this Opinion and Order to Plaintiff; and (iii) close this case.

**SO ORDERED**.

Dated:    March 18, 2026
          White Plains, New York

          PHILIP M. HALPERN
          United States District Judge